[Cite as *State ex rel. Bloodworth v. Bogan*, 2017-Ohio-7810.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO ex rel. RONALD BLOODWORTH, | : | CASE NO. CA2016-05-043 |
| | : | |
| Relator, | : | D E C I S I O N 9/25/2017 |
| | : | |
| - vs - | : | |
| | : | |
| BOBBY J. BOGAN, WARDEN, et al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

ORIGINAL ACTION IN MANDAMUS

Ronald Bloodworth, #A366695, Lebanon Correctional Institution, 3791 State Route 63, Lebanon, Ohio 45036, relator, pro se

Michael DeWine, Ohio Attorney General, Byron D. Turner, Criminal Justice Section, 150 East Gay Street, 16th Floor, Columbus, Ohio 43215, for respondent

**Per Curiam.**

{¶ 1} The above cause is before the court pursuant to a petition for writ of mandamus filed by relator, Ronald Bloodworth, on May 31, 2016. As relator has been declared a vexatious litigator pursuant to R.C. 2323.52, the complaint was filed with a motion for leave to proceed which was granted by this court on July 15, 2016.

{¶ 2} On September 6, 2016 relator filed a motion for summary judgment and

memorandum in support. On November 14, 2016, respondents, Bobby J. Bogan, Jr. and Chae Harris, filed a combined memorandum contra to the motion for summary judgment and cross-motion for summary judgment. On January 4, 2017, relator filed a reply memorandum in support of his motion for summary judgment and a memorandum in opposition to respondents' cross-motion for summary judgment. The parties were then given the opportunity to file additional evidence or argument in support of their respective motions for summary judgment.

{¶ 3} On April 27, 2017, this court filed an entry directing the parties to file memoranda detailing the specific responses to the eight public records requests in dispute. On June 1, 2017, respondents filed a memorandum regarding public record production. On June 29, 2017, relator filed a responsive memorandum. On July 3, 2017, respondents filed a reply memorandum. On August 30, 2017, relator filed a "sur-reply" memorandum.

{¶ 4} Relator is an inmate currently incarcerated at Lebanon Correctional Institution. Respondent, Bobby J. Bogan, Jr., was the warden of the Warren Correctional Institution ("WCI") at the time the complaint was filed. Respondent, Chae Harris, was the warden's administrative assistant/public information officer at WCI at the time the complaint was filed. Harris has subsequently been promoted to warden at WCI and Bogan is now assigned to the Ohio Department of Rehabilitation and Correction Operations Support Center and has an office at Dayton Correctional Institution.

{¶ 5} The petition for mandamus concerns eight public records requests made by relator and directed to various individuals at the WCI and the Ohio Department of Rehabilitation and Correction ("ODRC"). The public records requests are as follows:

(1) Request to Lauren Chalupa, Staff Counsel, ODRC dated October 5, 2015

(2) Request to Gary C. Mohr, Director, ODRC dated October 5, 2015

(3) Request to Gary C. Mohr, Director, ODRC dated October 26, 2015

(4) Request to Mr. Harris, Administrative Assistant dated November 2, 2015

(5) Request to Mr. Harris, Administrative Assistant dated November 22, 2015

(6) Request to Mr. Harris, Administrative Assistant dated December 29, 2015

(7) Request to Public Information Officer of WCI, Mr. Harris dated January 11, 2016

(8) Request to Mr. Harris, Public Information Officer dated February 1, 2016

{¶ 6} Ohio's Public Records Act, R.C. 149.43 et seq., reflects the policy that open government serves the public interest and the democratic system. The Public Records Act must be liberally construed in favor of broad access to public records with any doubt being resolved in favor of disclosure. *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 8th Dist. Cuyahoga No. 93058, 2009-Ohio-5573. Exceptions to disclosure under the public records act are strictly construed against the public records custodian, and the custodian has the burden to establish the applicability of an exception. *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903. Inmates have been permitted to make public records requests directed to the ODRC and correctional institutions in Ohio. *See State ex rel. Daugherty v. Moore*, 10th Dist. Franklin No. 11AP-5, 2011-Ohio-6453. Mandamus is the proper remedy to compel production of public records. R.C. 149.43(C)(1).

{¶ 7} The first public records request was made by relator to Lauren Chalupa, ODRC Staff Counsel, on October 5, 2015:

(1) Produce each and every document relating to ODRC's inter-departmental mail service guidelines and procedures.

(2) Produce and provide a copy of the document headed record of proceedings of rules of infraction board (DRC 4025), including a summary of all witness testimony who testified before the board as referenced in this DRC 4025.

(3) Provide me with a copy of the work orders, work order invoice request for repairs, invoice, orders, purchase orders, receipts, shipping orders, or other documents completed by any WCI employee regarding WCI's library

LexisNexis computer system and/or the library's copy machine for the preceding two-year period.

(4) Produce and provide me a copy of the document(s) completed by the person(s) who performed repair work on the WCI library LexisNexis computer system and the library's copy machine for the preceding two-year period.

{¶ 8} Requests three and four were, according to the request, "a revised version of my August 14, 2015 public records request * * *."

{¶ 9} The first request was denied by Chalupa as overly broad. The second request was denied because inmate records are not public records pursuant to R.C. 5120.21(F) and R.C. 149.43(A)(1)(v). *See State ex rel. Harris v. Rhodes*, 54 Ohio St.2d 41 (1978). Requests three and four were forwarded to WCI by Chalupa for response.

{¶ 10} The court agrees that the first request was overly broad. Relator contends that he clarified this request in a subsequent letter to Chalupa dated November 30, 2015. However, a review of the letter indicates that relator merely argued that the request was in fact not overly broad. With respect to the second request, R.C. 5120.21 provides that records on prisoners kept by ODRC shall be accessible only to ODRC employees and are not public records. *State ex rel. Harris v. Rhodes*, 154 Ohio St.2d 41 (1978). It appears that the third and fourth requests were in fact forwarded to Warren Correctional Institution for response. It does not appear that a further response to these specific public records requests was made. However, subsequent public records requests by relator included this material and it was provided by respondents.

{¶ 11} Relator's second public records request was also dated October 5, 2015 and was directed to Gary Mohr, Director of ODRC. The request contained nine separate public records requests, eight of which sought communications or documents relied upon by Kimberly Mockabee, Deputy Warden of Special Services, relating to WCI's LexisNexis legal research computers and WCI's library printing system. These eight requests were

responded to by producing thirty-one pages of email messages sent between August 10, 2015 and November 24, 2015. The ninth request concerns written policies on handling copy machine and computer repairs at WCI. Apparently, no documentation on this request was provided to relator, but the ODRC policies on copy machine and computer repairs are available on the ODRC website, Policy No. 05-OIT-25.

{¶ 12} The third public records request was made on October 26, 2015 to ODRC Director Gary Mohr. Relator requested the following items:

(1) Unredacted master schedule of law library and/or library hours.

(2) Unredacted accurate master historical file or log created and maintained by Warren Correctional Institution library staff from July 2015-the present date documenting the actual weekly hours of accessibility for the inmate library and law library.

(3) Unredacted accurate master historical file or log documenting approved closings, such as but not limited to, unexpected sick leave, fog alerts, librarian meetings/training and institutional emergency.

(4) Unredacted library monthly report completed by Warren Correctional Institution principle or designee by the fifth of each proceeding six months forwarded to the Ohio Central School System Library Administrator.

(5) Unredacted Warren Correctional Institution Library Procedural Manual containing the procedures maintained that outline day to day operations, the library improvement plan, the library priority purchase list and other pertinent information for the proceeding twelve-month period.

{¶ 13} In response to all five requests, relator was provided with the WCI library handbook, approximately 25 pages in length. The handbook includes a listing of library hours of operation, a section on use of computers and internet access, a section on printing and copying of materials and a section on legal services available.

{¶ 14} Relator contends that the law library handbook is not responsive to his requests because it is not the "properly requested unredacted "master" schedule of law library and/or library hours maintained by the Warren Correctional Institution library staff." Relator argues that WCI is required to keep other records or schedules which have not been provided.

However, there is no indication that these records or schedules exist. A public agency is not obligated to produce records that do not exist.

{¶ 15} Also in response to these requests, respondents provided redacted law library sign-in sheets for the year 2015 and the month of January 2016. Relator apparently contends that his public records requests were not complied with because he requested an unredacted log. However, as indicated above, the revised code provides that records of inmates committed to the Department of Rehabilitation and Correction are not public records. R.C. 5121.2(F); 149.43(A)(1)(v).

{¶ 16} Relator's fourth public records request was sent to Harris on November 2, 2015. The request asks for three groups of documents: (1) All documents that set forth the chain of custody of all outgoing mail after it is retrieved from the WCI U.S. Postal mailbox; (2) documents that show every article of mail relator signed for as having been received on Wednesday, October 21, 2015; and (3) the document that shows the date that an article of legal mail relator placed in the WCI U.S. Postal mailbox dated October 10, 2015 and addressed to the Supreme Court of Ohio was mailed from WCI.

{¶ 17} The first request above was denied because no policy involving chain of custody exists. Relator contends that respondents have provided documents that satisfy the second and third requests above, but that the documents were not provided until he began this litigation. Respondents counter that Harris timely produced a legal mail log from Warren Correctional Institution for the entire month of October 2015. In response to the third request above, Harris produced a "personal withdraw checkout slip" which describes the mail relator sent to the Ohio Supreme Court on October 16, 2015.

{¶ 18} Although relator contends that responses to the second and third items above were not provided to him until he filed the present mandamus action, respondents contend that these items were timely provided. The record includes a letter to relator from Chalupa

dated January 4, 2016 in which Chalupa advises relator as follows: "I find that Mr. Harris responded appropriately to your November 2, 2015 records request. He replied to both prongs of your request by letting you know that there was no policy regarding the chain of custody regarding outgoing mail and provided you with both days of the requested legal mail logs." It therefore appears that relator was timely provided documentation in response to these requests.

{¶ 19} Relator's fifth public records request, sent to Harris on November 22, 2015, requests documents that show "each and every article of outgoing legal mail that was processed by the cashier's office involving inmates who mailed outgoing legal mail from WCI using a cash slip attached thereto for postage purposes from October 1, 2015 to October 31, 2015." His sixth public records request, dated December 29, 2015 and also sent to Harris, relator requests "the WCI outgoing inter-departmental mail log book for legal mail or otherwise for the dates of October 26, 2015 to November 15, 2015." Relator was granted the opportunity to review documents related to both requests on January 6, 2015. He was apparently unable or unwilling to pay copying costs required to receive copies of the documents he requested. Relator's December 29, 2015 request also sought "inspection of with the sole discretion to copy a WCI kite log page(s) for outgoing inter-institution communication between WCI inmates and central-office DRC staff from September 2015 to December 20, 2015." Relator was advised that these documents do not exist.

{¶ 20} Relator's seventh public records request, dated January 11, 2016 and directed to Harris, sought production of "outgoing legal mail log book page(s) from October 1, 2015 to October 31, 2015 UNREDACTED." Relator was advised that he was not entitled to unredacted copies of the legal mail logbook. There is a note on the request, apparently written by Harris, which states: "You cannot have unredacted copies. I already have redacted copies for you which you didn't show any interest in." Relator disagrees with

ORDC's position that the names of inmates on the outgoing legal mail log book should be redacted. However, this does not justify relator's conclusion that his public records request was not complied with because information was redacted.

**{¶ 21}** Relator's eighth public records request, dated February 1, 2016 and directed to Harris, contains six separate requests. First, relator requested a "report of security control" completed by WCI staff against inmate Ronald Bloodworth [relator] on December 10, 2014. In response, a one-page document styled "report of security control" was produced. Relator's requests 2 through 6 request an audio recording of a rules infraction board ("RIB") hearing held December 16, 2014 in case No. WCI-14-007014 (apparently, a case that involved relator); a record of proceedings for the same case; testimony of the accused inmate at the RIB hearing (presumably relator); other testimony take at the hearing; and "a summary of the RIB panel member's decision." These five requests were denied as not involving public documents. The only documents furnished in response were a conduct report and a document styled "disposition of the rules infraction board."

## Conclusion

**{¶ 22}** During a period of four months from October, 2015 to January 2016, relator sent a series of kites (internal communications between an inmate and staff) to respondents demanding public records. The requests overlap to some extent, and most are difficult to read. Some of the requests "revise" prior requests; others inquire about the status of prior requests and also contain new public records requests. The eight public records requests demand production of not less than thirty groups of documents. The record indicates that respondents complied with relator's requests, although not always to relator's satisfaction.

**{¶ 23}** In an affidavit in support of the respondents' motion for summary judgment, Harris states that he responded to each of relator's requests "as best as I was able to determine from [relator's} kite. I maintained a file with all documents that were identified as

- 8 -

existing and which constitutes the public records that were subject to disclosure to a prison inmate." Harris states that he does not recall a single instance where a request by relator to inspect public records was denied and the records were not properly disclosed. Relator's requests were only denied when the records did not exist, or the requested records were not public records and disclosure was not required. Harris admits that he did provide some records to respondent in redacted form even though they were requested in unredacted form, because providing the records in unredacted form would have provided relator with "other inmates' information."

{¶ 24} Chalupa's affidavit in support of respondents' motion for summary judgment similarly reflects that all of relator's public records requests were responded to. Chalupa states that every request for public records received from relator by the ODRC, ODRC Director Mohr, or Chalupa herself, were "appropriately responded to by either citing to an appropriate lawful reason to deny the request, or approved for disclosure, perhaps in redacted form." The record supports this testimony.

{¶ 25} Relator has been declared to be a vexatious litigator in the state of Ohio and has filed more than fifty complaints, original actions or appeals in Ohio courts during the past five years. This court granted relator leave to proceed and file the present action in mandamus because it considers the alleged denial of public records to be a serious matter. However, upon review of the record and the evidence submitted, it appears that relator's statements in his complaint and his motion for summary judgment that no public records were provided in response to his requests is inaccurate. It appears that the records he requested were not produced only when the records did not exist, were not public records, or when relator refused to accept redacted records or pay the cost of the records he requested. All of the redactions in records provided by respondents appear to be based upon not divulging information related to other inmates.

{¶ 26} Moreover, despite relator's "Affidavit of Exhaustion" filed with his complaint, there is no indication that he exhausted inmate grievance procedures prior to seeking leave to file the present mandamus action. R.C. 2969.26(A) requires that before filing any civil action relating to an aspect of institutional life that directly and personally affects an inmate, the inmate shall exhaust administrative remedies available through the inmate grievance process. All of the public records requested by relator concern aspects of institutional life that directly and personally affect him. Mandamus is a civil action under Ohio law. Therefore, relator's failure to comply with the mandatory provisions of R.C. 2969.26(A) is by itself grounds for dismissal. *State ex rel. Moore v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-90, 2012-Ohio-1070.

{¶ 27} Accordingly, we find that under the circumstances of this case, relator has no clear legal right to the requested relief. Relator's petition for writ of mandamus is therefore without merit. The motion for summary judgment filed by respondent is granted, and the motion for summary judgment filed by relator is denied.

S. POWELL, P.J., RINGLAND and M. POWELL, JJ., concur.